(No. 3608—)

BUNN CAPITOL GROCERY CO., A CORPORATION, ET AL., Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 9, 1943.*

CHARLES TRUE ADAMS and SAMUEL MORGAN, for claimants.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

The facts in this care are stipulated.

The claimants are engaged in the wholesale grocery business. During the years 1935 to 1936 the Illinois Emergency Relief Commission, hereinafter called the Commission, financed its program of aid to the unemployed of the State by issuing relief orders which were exchangable at retail stores for various necessities including food. Said orders were demand obligations of said Commission and considerable time elapsed from their execution to their redemption, being paid, in fact, from three to six months subsequent to their original date. It was a common practice for retail merchants to assign many of these relief orders in lieu of cash to wholesale grocers in payment of wholesale grocery bills; said wholesale grocers, including the said claimants, would in turn obtain the full face value of such relief orders in cash from the Commission aforesaid upon the expiration of the said three to six months period; that prior to May, 1936, vast numbers of these assigned relief orders were retired by the Commission and prior to the last mentioned date no question was raised as to their validity or transferability, in fact the Commission prescribed and furnished forms for the assignment of relief orders.

That during the second or third week of May, 1936, the Auditor of Public Accounts in pursuance of the suggestions of the Department of Finance began for the first time, as far as these claimants were concerned, to set-off such sums as were due the State, from the retail merchants for Retailers' Occupational Tax against the principal amount of outstanding and unredeemed relief orders by virtue of the provisions of Section 12-13, Chapter 15, Smith Hurd Revised Statutes (1935); that the effect of these set-offs according to the claimants was to deprive them from full face value, redemption in certain relief orders assigned to them by retail grocers who were delinquent in their payment of this tax. Claimants say they were given no warning of the intention of the State of Illinois to invoke this law; that they acted in good faith and

in complete reliance upon the course of conduct established over a period of many months by the said Commission, and that they were led to believe that the relief orders were redeemable by said Commission at all times, and under all conditions, and that so believing they sold groceries to retail merchants who had no credit standing or rating whatsoever and accepted relief orders in payment in lieu of cash. Claimants say they had no means of easily ascertaining whether or not any of the retail merchants who purchased from them were in arrears to the Department of Finance.

Claimants further say that they are the holders and owners of relief orders in the following amounts:

| | |
|---|---:|
| Bunn Capitol Grocery Co. | $497.29 |
| Decatur Grocery Co. | 240.84 |
| DuQuoin Packing Co. | 448.08 |
| Guyer & Calkins Co. | 133.74 |
| Howard & Casey Co. | 395.34 |
| Intercity Grocery Co. | 400.42 |
| Jageman-Bode Co. | 412.26 |
| Chris Hoerr & Son Co. | 99.64 |
| Kohl & Meyer Co. | 197.98 |
| Peter G. Lennon Co. | 64.50 |
| Oakford & Fahnestock | 465.95 |
| Peyton-Palmer Co. | 98.97 |
| Rockford Wholesale Grocery Co. | 281.84 |
| The Scudders-Gale Grocery Co. | 212.10 |
| C. E. Ward & Sons | 113.15 |
| | $4,062.10 |

that they have on numerous occasions subsequent to June, 1939, demanded payment of these sums, plus interest at the legal rate, from the said Commission, the Department of Finance, and the Auditor of Public Accounts for the State of Illinois, but that these claims have been denied and to date they have received no payments on account.

Both the claimants and the Attorney General have filed briefs and arguments citing many authorities.

Claimants say they should recover for the following reason:

1. The relief orders were assignable and transferable.
2. The State through its agency the Illinois Emergency Relief Commission, by its actions, conduct, and representations entered into an implied contract to pay in full the relief orders assigned to the claimants.
3. The State is estopped by its conduct, acquiescence, and representations from denying its liability to the claimants on the said relief orders.

4. When a State permits itself to be sued and submits itself voluntarily to the jurisdiction of a court, its rights are subject to every equitable rule and principle, including that of estoppel.

5. Sections 12-13, Chapter 15, Smith-Hurd Revised Statutes (1935) were enacted long before the passage of the Retailers' Occupational Tax Act or the establishment of the Illinois Emergency Relief Commission and were not intended to apply to cases involving either.

The respondent says claimants should not recover for the following reasons:

1. Even though the relief orders might have been assignable, they were not negotiable, consequently, such orders were subject to any and all defenses in the hands of assignees.

2. An implied contract to do an illegal act cannot arise between the State and an individual, but even if it could, the facts here do not support an allegation of "implied contract" or "unjust enrichment."

3. No estoppel to deny liability has arisen because:
 (a) the State never represented the relief orders as being negotiable, and,
 (b) the claimants are not holders for value without notice. The State never represented the relief orders as being negotiable. The claimants are not holders for value without notice.

4. A State is not subject to estoppel when acting within its sovereign capacity.

5. The Legislature did not intend relief orders either to be or to possess the attributes of legal tender; if it had any such intention, the act would have been unconstitutional and the relief orders issued thereunder would be void.

The question for our decision requires a construction of Chapter 15, Section 12-13, Smith-Hurd, Revised Statutes (1935) which provides as follows:

(Section 12). Whenever any person shall be entitled to a warrant on the treasurer, on any account or claim in favor of the State, then due and payable, the Auditor of Public Accounts shall ascertain the amount due and payable to the State, as aforesaid, and issue a warrant on the treasurer, stating the amount for which the party was entitled to a warrant, the amount deducted therefrom, and on what account, and directing the payment of the balance; which warrant so issued shall be entered on the books of the treasurer, as for the amount the party was entitled to, but the balance only shall be paid.

(Section 13). No sale, transfer or assignment of any claim or demand against the State, or right to a warrant on the treasurer, shall prevent or affect the right of the Auditor to make the deduction and off-set provided in the foregoing section.

When construed it simply means that when the Auditor finds the claimant to whom a warrant is payable owes the State on any claim whatever, that a balance shall be struck, claimant required to pay the claim, and the balance if any,

is to be remitted to claimant by warrant on the treasurer by the balance so found to be due.

Section (13) provides that, no sale, transfer or assignment of any claim or demand against the State, or right to a warrant on the treasurer, shall prevent or effect the right of the Auditor to make the deduction and set-off as provided in Section (12), Supra.

It was the State Auditor's duty to take set-off from the relief orders which had been assigned to claimants. Sections (12) and (13) of Chapter (15) is the law of this State and is binding on the State Auditor. It is mandatory. Therefore the claimants when they accepted the various relief orders took them with direct notice of the provisions of Chapter (15). The State Auditor would have been derelict in his duty had he failed to enforce the above statutory provisions. He was under oath to support the constitution and the laws of this State. He had entered into a bond payable to the people of the State of Illinois for the faithful performance of his duties.

These claims cannot be allowed under any guise whatever and the complaint must be dismissed.

Other contentions urged, and the supporting arguments have been considered. Extension of this opinion by a discussion of the additional points made, is deemed unnecessary.

Award denied. Complaint dismissed.